VITO A. TAURO,

        Plaintiff,

v.                 5:15-CV-0341
                  (GTS)

CAROLYN W. COLVIN
Acting Commissioner of Social Security,

        Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| OLINSKY LAW GROUP<br>  Counsel for Plaintiff<br>300 S. State Street, Suite 420<br>Syracuse, NY 13202 | HOWARD D. OLINSKY, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL–<br>REGION II<br>  Counsel for Defendant<br>26 Federal Plaza, Room 3904<br>New York, NY 10278 | ELIZABETH D. ROTHSTEIN, ESQ. |

GLENN T. SUDDABY, Chief United States District Judge

## **DECISION and ORDER**

   Currently before the Court, in this Social Security action filed by Vito A. Tauro ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 13-14.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on October 20, 1947. Plaintiff has a high school education and has past work buying, selling, and repairing used automobiles and trailers at his business, Anthony Tauro's Used Cars. Generally, Plaintiff's alleged disability consists of memory loss, seizures, blurred vision, headaches, and post-concussion syndrome resulting from a head injury in 1994. Plaintiff's alleged disability onset date is October 1, 2006.

### B. Procedural History

On January 19, 2007, Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income. Plaintiff's application was initially denied on June 14, 2007, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). On August 18, 2009, Plaintiff appeared in a hearing before the ALJ, Elizabeth W. Koennecke. (T. 23-51.) On November 9, 2009, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 11-22.) On August 8, 2011, the Appeals Council denied Plaintiff's request for review, and Plaintiff appealed to the United States District Court for the Northern District of New York. (T. 1-3, 438-52.)

Pursuant to the District Court's remand order of October 15, 2012, the Appeals Council remanded the matter for further administrative proceedings on November 9, 2012. (T. 463-66.) Plaintiff appeared in a second hearing before the ALJ on April 4, 2013. (T. 420-37.) On June 27, 2013, the ALJ issued a second written decision finding Plaintiff not disabled under the Social Security Act. (T. 381-401.) On January 23, 2015, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 376-80.)

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following two findings of fact and conclusions of law. (T. 16-19.) First, the ALJ found that Plaintiff has engaged in substantial gainful activity ("SGA") since October 1, 2006, the alleged onset date. (*Id.*) Second, the ALJ found that there has been no continuous 12-month period since the alleged onset date during which Plaintiff has not engaged in SGA. (T. 19.)

### D. The Parties' Briefings on Their Cross-Motions

Generally, Plaintiff asserts three arguments in support of his motion for judgement on the pleadings. (Dkt. No. 13, at 11-24 [Pl.'s Mem. of Law].) First, Plaintiff argues that the ALJ's credibility determination was not supported by substantial evidence. (*Id.,* at 14-18.) Second, Plaintiff argues that the ALJ erred in determining that Plaintiff received substantial income from his business in 2006, 2007, and 2008 because the ALJ (1) failed to deduct his reasonable business expenses, (2) improperly assessed the monetary value of his daughter's unpaid contribution to his business, and (3) incorrectly calculated his countable income. (*Id.,* at 18-21.) Third, and finally, Plaintiff argues that the ALJ erred in determining that Plaintiff received substantial income from his business in 2009, 2010, 2011, and 2012 because the ALJ (1) improperly rejected his income records, (2) requested additional records that were immaterial, and (3) failed to comply with the District Court's remand order to develop the record. (*Id.,* at 20-24.)

Generally, Defendant asserts two arguments in support of her motion for judgment on the pleadings. First, Defendant argues that the ALJ properly concluded that Plaintiff's work after his alleged onset date constituted SGA. (Dkt. No. 14, at 4-13 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ fully developed the record. (*Id.*, at 13-15.)

## II. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial

evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord, McIntyre v. Colvin,* 758 F.3d 146,

5

150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

For the ease of analysis, Plaintiff's arguments will be reorganized and consolidated below.

### A. Whether the ALJ's Credibility Determination Was Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14, at 11-15 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

"The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1982). "It is the function of the Secretary, not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (quoting *Carroll*, 705 F.2d at 642) (internal quotation marks and alterations omitted). The court must uphold an ALJ's credibility determination when it is supported by substantial evidence. *Aponte*, 728 F.2d at 591.

The ALJ stated that she afforded little weight to Plaintiff's testimony that minimized his involvement in his business and overstated his daughter's involvement. (T. 389.) First, the ALJ noted that this testimony was inconsistent with the information that Plaintiff supplied in his work activity reports. (T. 390-91.) For example, the ALJ noted that, at the first hearing on August 18, 2009, Plaintiff testified that he relied heavily on his daughter to run his business, and that she did most of the paperwork, made phone calls, completed many daily business tasks, and took notes

for him due to his alleged memory problems. (*Id.*) The ALJ noted that Plaintiff testified that he valued his daughter's work at $10 per hour, and that she worked 19 hours per week during the school year and 50 hours per week during the summer. (T. 389-92.)

However, the ALJ noted that work activity reports indicated that Plaintiff bought and sold automobiles and trailers, performed book work, and was the primary manager and employee of the business, while his daughter helped him with paperwork as an unpaid assistant for about ten hours a week. (T. 390.) Additionally, Plaintiff's work activity report dated March 2, 2007, stated that he worked two to four hours daily, and Plaintiff's work activity reports dated August 17, 2007, and May 4, 2008, stated that he worked about four hours per day for five days a week. (*Id.*)

Second, the ALJ found that Plaintiff's testimony that minimized his involvement in his business and overstated his daughter's involvement was not credible based on Plaintiff's daughter's young age during the relevant time period. (T. 390.) The ALJ reasonably noted that Plaintiff's daughter was age 12 on Plaintiff's alleged onset date in 2006 and was age 14 at the end of 2008. (T. 390-91.) The ALJ found that, while Plaintiff's daughter may have filled out paperwork and made some phone calls as stated in the work activity reports, Plaintiff was still the party responsible for the daily operation of his business, including buying the inventory, ensuring that necessary repairs were completed, and selling the inventory. (T. 390.)

Third, the ALJ found that, using Plaintiff's valuation from the August 2009 hearing, his daughter's contribution to his $13,000 business earnings would be $12,260 per year, while Plaintiff's contribution would be $640 per year. (T. 391-92.) The ALJ noted that, according to Plaintiff's valuation, his daughter's contribution accounted for approximately 95 percent of the business income, while Plaintiff's own contribution accounted for approximately five percent of the total income, a result that the ALJ reasonably concluded was not realistic. (T. 392.)

7

Turning to Plaintiff's argument that the ALJ erred by not considering the medical evidence demonstrating his deficits in mental functioning, the ALJ's analysis properly addressed the credibility of Plaintiff's statements concerning whether he engaged in SGA at step one. (T. 388-94.) Notably, the regulations explicitly provide that if a plaintiff is working and engaged in SGA, the plaintiff will be found not disabled regardless of his medical condition. 20 C.F.R. §§ 404.1520(b), 416.920(b). Accordingly, the ALJ was not required to consider Plaintiff's medical evidence in assessing the credibility of his testimony at step one.

For these reasons, the Court finds that the ALJ properly assessed the credibility of Plaintiff's statements regarding his income, work activity, and the extent of his daughter's involvement in his business. In so doing, the ALJ appropriately used her discretion as fact-finder to determine that Plaintiff's statements were not credible. *Mimms v. Heckler,* 750 F. 2d 180, 186 (2d Cir. 1984.) Moreover, the ALJ's credibility determination was supported by substantial evidence, including Plaintiff's work activity reports that were inconsistent with Plaintiff's testimony as discussed above. (T. 389.) The court must uphold an ALJ's credibility determination where, as here, it was supported by substantial evidence. *Aponte*, 728 F.2d at 591.

Accordingly, remand is not required on this basis.

### B. Whether the ALJ's Finding that Plaintiff Engaged in SGA Past His Alleged Onset Date was Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 14, at 11-15 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

At step one of the sequential analysis, the ALJ must determine whether a plaintiff is engaging in SGA. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *Williams v. Comm'r of Soc.*

*Sec.,* 236 F. App'x 641, 643 (2d Cir. 2007). If the answer is yes, a finding that the plaintiff is not disabled is required, and the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Plaintiff bears the burden of demonstrating the absence of SGA. *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004); *Berry,* 675 F.2d at 467; *Briller v. Barnhart,* 2005 WL 2403857, at *8 (S.D.N.Y. Sept. 29, 2005).

SGA is defined as work activity that is both "substantial" and "gainful." 20 C.F.R. §§ 404.1572, 416.972. "Substantial" work activity is work that involves performing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). Work may be substantial even if it is performed on a part-time basis or if a claimant does less, is paid less, or has less responsibility than when he worked before. *Id.* "Gainful" work activity is work that is usually performed for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b).

Generally, when a plaintiff has earnings from employment or self-employment above a certain level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 C.F.R. §§ 404.1574, 404.1575, 416.974, 416.975. When a plaintiff engages in SGA, he will be found not disabled regardless of his age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). The SSA applies three tests to determine whether a self-employed plaintiff has engaged in SGA. 20 C.F.R. §§ 404.1575(a), 416.975(a); SSR 83-34, 1983 WL 31256 (Jan. 1, 1983). Pursuant to test one, a self-employed individual engages in SGA if he renders services that are "significant" to the operation of the business, and receives a "substantial" income from the business. 20 C.F.R. §§ 404.1575(a)(1), 416.975(a)(1); SSR 83-34. If a self-employed plaintiff has not engaged in SGA under test one, the SSA will then consider tests two and three. (*Id.*)

### i. Test One, Part One: Whether Plaintiff Rendered "Significant" Services to the Operation of His Business From 2006 Through 2012

When a plaintiff's business involves the services of more than one person, the SSA considers the plaintiff's services "significant " if he contributes more than half of the total time required for the management of the business, or renders management services for more than 45 hours a month, regardless of the total management time required by the business. 20 C.F.R. §§ 404.1575(b)(1), 416.975(b)(1); SSR 83-34.

Here, the ALJ determined that part one of test one was satisfied because Plaintiff continued to render "significant" services to his business after his alleged onset date of October 1, 2006. (T. 389-90.) The ALJ noted that, in both his testimony and work activity reports, Plaintiff indicated that he worked more than 45 hours per month. (T. 390.) Moreover, the ALJ noted that Plaintiff testified that he was the person responsible for the daily operation of his business, and that he worked more hours than his sole, unpaid assistant (his daughter). (*Id.*) The ALJ further noted that, on his income tax returns for the years 2006 through 2012, Plaintiff claimed that he was materially participating in the operation of his business and had no employees. (*Id.*) Accordingly, the ALJ properly found that Plaintiff continued to render "significant" services after his alleged onset date because he continued to contribute more than half of the total time required for management of his business, and continued to render more than 45 hours per month in management services to his business. (*Id.*)

### ii. Test One, Part Two: Whether Plaintiff Received "Substantial" Income From His Business in 2006, 2007, and 2008

A self-employed plaintiff is deemed to receive a "substantial" income from his business when the plaintiff's "countable" income from his business averages more per month than the amount set forth in the SGA earnings guidelines for the corresponding calendar year. 20 C.F.R.

§§ 404.1575(c)(1), 416.975(c)(1); SSR 83-34. Even when a plaintiff's countable income is less than the amounts set forth in the earnings guidelines, the plaintiff's income is deemed "substantial" when the livelihood that he derives from the business is comparable to that which he had before becoming disabled, or is comparable to that of unimpaired self-employed persons in the individual's community who are in the same or a similar business as their means of livelihood. 20 C.F.R. §§ 404.1575(c)(2)(ii), 416.975(c)(2)(ii); SSR 83-34.

First, Plaintiff argues that the ALJ's countable income calculation did not deduct his business expenses, yet Plaintiff fails to identify any specific business expenses that should have been deducted. (Dkt. No. 13, at 18 [Pl.'s Mem. of Law].) Instead, Plaintiff argues that the District Court's remand order instructed the ALJ to develop the record, "which, presumably, would include some inquiry into such deductions." (*Id.*) However, the District Court remanded for further development of the record regarding Plaintiff's income in 2009. (T. 461-62.) The District Court did not make any findings regarding the ALJ's determination that the Plaintiff engaged in SGA in 2006, 2007, and 2008, or the adequacy of the record for that time period. (T. 457-62.) Here, the ALJ properly noted that Plaintiff failed to report any business-related expenses on his income tax returns for 2006, 2007, and 2008. (T. 391.) Therefore, the ALJ reasonably found that Plaintiff did not have any business-related expenses to reduce his gross income during those years. (*Id.*)

Second, Plaintiff argues that the ALJ's valuation of his daughter's work "has no support in the evidence." (Dkt. No. 13, at 19 [Pl.'s Mem. of Law].) The ALJ explained that she asked Plaintiff to provide competent, objective evidence regarding his daughter's involvement in his business (as a basis to calculate the monetary value of her contribution), however Plaintiff submitted only a letter from his daughter that failed to place a monetary value on her services or

11

specify an exact number of hours that she worked for Plaintiff's business. (T. 391, 394, 586.) Further, the ALJ noted that Plaintiff's counsel confirmed that Plaintiff would not submit any additional information. (T. 391, 394, 424.)

After determining that Plaintiff's statements regarding the value of his daughter's contribution to his business were not credible, and considering the lack of record evidence concerning his daughter's contribution, the ALJ valued Plaintiff's daughter's unpaid contribution to his business at a maximum of $1,000 per year for the tax years 2006, 2007, and 2008. (T. 391-92.) Accordingly, the ALJ properly considered Plaintiff's failure to provide the requested information, and continued her analysis based on the available information. (T. 394) (citing 20 C.F.R. §§ 404.1516, 416.916 (stating that, if a plaintiff fails to submit evidence that the SSA needs and requests, a decision will be rendered based on the information available); *see generally, e.g., Barry v. Colvin,* 606 F. App'x 621, 622 (2d. Cir 2015) ("A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits."); *Eusepi v. Colvin,* 595 F. App'x 7, 8 (2d Cir. 2014).

Third, Plaintiff argues that the ALJ's SGA analysis improperly used Plaintiff's gross income and net income, rather than his adjusted gross income, in determining that Plaintiff's income was "substantial." (Dkt. No. 13, at 18-19 [Pl.'s Mem. of Law].) To determine whether a self-employed plaintiff receives a "substantial" income from his business, the Commissioner calculates a plaintiff's "countable" income using the following two steps. 20 C.F.R. §§ 404.1575(c)(1), 416.975(c)(1); SSR 83-34, 1983 WL 31256, at *4. First, normal business expenses are deducted from gross income to determine a plaintiff's net income amount. *Id.* Second, the reasonable value of any significant amount of unpaid help provided by a plaintiff's spouse, children, or others is deducted from the net income amount. *Id.*

12

Here, the ALJ properly derived Plaintiff's gross and net income amounts from his tax returns, and correctly calculated his countable income pursuant to the regulations. (T. 391). The ALJ noted that Plaintiff reported no business expenses to deduct from his gross income, and therefore Plaintiff's net income amount was $13,000, as reflected in Schedule C of Plaintiff's tax returns for 2006, 2007, and 2008. (T. 120, 128, 132, 391-93.) Reviewing courts have held that "Schedule C constitutes an appropriate measure of Plaintiff's net income, *i.e.*, countable income for SGA purposes, because it accounts (and allowed Plaintiff to deduct) for 'normal business expenses.'" *Rubinson v. Comm'r of Soc. Sec.,* 96 F. Supp. 3d 386, 401 n.13 (D.N.J. March 25, 2015) (citing *Aponte v. Astrue*, 2012 WL 3231007, at *6 (M.D. Fla. July 12, 2912) (considering the plaintiff's Schedule C earnings for the purpose of the countable income test under 20 C.F.R. § 404.1575), *adopted by* 2012 WL 3231029 (M.D. Fla. Aug. 6, 2012).

As discussed above, the ALJ valued Plaintiff's daughter's unpaid contribution to his business at a maximum of $1,000 per year for the tax years 2006 to 2008. (T. 391-92.) The ALJ then subtracted this unpaid contribution from Plaintiff's reported annual net income of $13,000, and determined that Plaintiff's monthly countable income for the years 2006, 2007, and 2008 was $1,000 per month. (*Id.*) Accordingly, the ALJ properly found that Plaintiff's earnings exceeded the presumptive SGA levels in 2006, 2007, and 2008.[1] (*Id.*)

---

[1] The ALJ noted that the monthly presumptive substantial gainful activity amounts were $860 for 2006; $900 for 2007; and $940 for 2008. (T. 391) (citing 20 C.F.R. §§ 404.1574, 404.1574(a), 416.974, 416.974(a), POMS-DI 10501.015[B][Table 2]); Substantial Gainful Activity Monetary Amounts, Social Security Administration, http//www.ssa.gov/OACT/COLA/sga.html (last visited Aug. 2, 2016).

13

### iii. Test One, Part Two: Whether Plaintiff's Received "Substantial" Income From His Business in 2009, 2010, 2011, and 2012

The ALJ found that Plaintiff's net self-employment income for 2009, 2010, 2011, and 2012 was insufficient to qualify as presumptive SGA under the regulations,[2] but found that Plaintiff received "substantial" income during these four years because his income was reasonably comparable to what it had been before his alleged disability onset in 2006. (T. 392). The ALJ noted that Plaintiff's income tax returns indicate that he received the following net income amounts since 2006: $13,000 in the years 2006, 2007, and 2008; $11,000 in the year 2009; and $10,000 in the years 2010, 2011, and 2012. (T. 391.)

First, Plaintiff argues that the ALJ improperly questioned the veracity of his income records from 2009 through 2012, and "rejected" the income records as evidence that Plaintiff did not earn SGA. (Dkt. No. 13, at 20-21 [Pl.'s Mem. of Law].) As noted above, the ALJ found that these income records showed that Plaintiff did not earn *presumptive SGA*, yet found that the same records showed that his income was "substantial" because it was *comparable* to his income before 2006. (T. 392.) Accordingly, the ALJ did not reject Plaintiff's income records, but properly continued her test one analysis and found that Plaintiff earned SGA under the next substantiality test of test one, part two.

Although the ALJ did not reject Plaintiff's income records, the ALJ reasonably noted discrepancies between Plaintiff's income tax returns and his work activity reports in discussing Plaintiff's credibility and his refusal to provide additional requested documentation to substantiate his income. (T. 393-94.) The ALJ noted that she requested copies of Plaintiff's

---

[2] The ALJ noted that the monthly presumptive substantial gainful activity amounts were $980 for 2009; $1,000 for 2010 and 2011; and $1,010 for 2012. (T. 391) (citing 20 C.F.R. §§ 404.1574, 404.1574(a), 416.974, 416.974(a), POMS-DI 10501.015[B][Table 2]); Substantial Gainful Activity Monetary Amounts, Social Security Administration, http//www.ssa.gov/OACT/COLA/sga.html (last visited Aug. 2, 2016).

14

income tax returns for the years 2001 through 2004, and documentation regarding the home equity loan that Plaintiff indicated that he used to support himself for many years, however Plaintiff's attorney refused to provide any of the requested materials by a letter dated May 30, 2013. (T. 385-86, 392.)

Plaintiff argues that the ALJ erred by requesting these records because they preceded Plaintiff's date of disability and were therefore not relevant. (Dkt. No. 13, at 21-24 [Pl.'s Mem. of Law].) However, as discussed above, this information was relevant to the ALJ's test one, part two analysis which required comparing Plaintiff's income, and other means of supporting himself, from the years before and after his alleged disability onset date in 2006. *See* 20 C.F.R. §§ 404.1575(c)(2)(ii), 416.975(c)(2)(ii) (stating that, even when a plaintiff's countable income is less than the amounts set forth in the earnings guidelines, the plaintiff's income is deemed "substantial" if the livelihood that he derives from the business is comparable to that which he had before becoming disabled); SSR 83-34 (providing that, in determining whether a self-employed plaintiff's livelihood is comparable to that which he had before becoming disabled, the SSA should consider "the source and amount of his or her livelihood over a number of years (generally not less than 5 years) prior to becoming disabled").

Next, Plaintiff argues that the ALJ failed to comply with the District Court's order to develop the record, and "should have made some effort to further develop the record by issuing subpoenas or calling for additional evidence from other sources." (Dkt. No. 13, at 18, 21-24 [Pl.'s Mem. of Law].) However, as noted above, the District Court remanded for further development of the record concerning Plaintiff's income in 2009. (T. 461-62.) While Plaintiff submitted his 2009 tax return, he failed to submit additional information that the ALJ requested to substantiate his income for other years. (T. 385-86, 388, 391-94, 423-25, 515-16, 534, 536,

15

571-81, 586-87.) Moreover, the ALJ noted that Plaintiff's counsel confirmed by letter dated May 30, 2013, that Plaintiff would not submit any additional information. (T. 391.)

Accordingly, the ALJ properly considered Plaintiff's failure to provide the requested information, and continued her analysis based on the available information. (T. 394) (citing 20 C.F.R. §§ 404.1516, 416.916) (providing that, if a plaintiff fails to submit evidence that the SSA needs and requests, a decision will be rendered based on the information available). The ALJ noted that Plaintiff's self-employment earnings records reported earnings of $13,853 in 2003, $14,684 in 2004, and $14,130 in 2005. (T. 392-93, 546-49.) Based on this information, the ALJ found that Plaintiff's income from 2009 to 2012 was reasonably comparable to what it had been before he allegedly became disabled in 2006. (T. 392.)

The ALJ reasoned that, while Plaintiff might not work as many hours as he did before he allegedly became disabled, his business continued to function without much variation in gross receipts. (*Id.*) Moreover, the ALJ noted that Plaintiff did not have any increased labor costs as a result of his alleged onset of disability because he reported that he did not have any employees either before or after he allegedly became disabled in 2006. (*Id.*) The ALJ further noted that, even if Plaintiff's income from 2009 to 2012 was not comparable to his income before his alleged onset of disability, Plaintiff testified that the decline in his business income was at least partly due to the economic downturn. (T. 392-93.)

In sum, the ALJ explained that Plaintiff was given every opportunity to substantiate his contention that the ALJ miscalculated Plaintiff's income in the SGA analysis, but Plaintiff refused to comply with the ALJ's requests for specific information and failed to provide any competent objective evidence to support his argument. (T. 385-86, 388, 391-94, 423-25, 515-16, 534, 536, 571-81, 586-87.) Additionally, substantial evidence supported the ALJ's

16

determination that Plaintiff's statements regarding his income, work activity, and the extent of his daughter's involvement in his business were not credible, as discussed above in Part III.A. of this Decision and Order. (T. 388-94.)

For these reasons, the ALJ's determination that Plaintiff engaged in SGA past his alleged date of disability was supported by substantial evidence. *See generally, e.g., Barry,* 606 F. App'x at 622 ("A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits."); *Eusepi,* 595 F. App'x at 8. Therefore, remand is not required in this matter.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: August 19, 2016
       Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge